# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

RHONDA PRYOR              )

                                   )

       **v.**                   )       **Case No. 3:23-cv-00532**

                                   )

**WILLIAMSON COUNTY BOARD**   )

**OF EDUCATION d/b/a**        )

**Williamson County Schools**     )

**TO:**   **Honorable Eli J. Richardson, United States District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered June 1, 2023 (Docket Entry No. 5), this *pro se* employment discrimination case was referred to the Magistrate Judge for pretrial proceedings.

Pending before the Court is the motion for summary judgment (Docket Entry No. 31) of Defendant Williamson County Board of Education d/b/a Williamson County Schools. The motion is opposed by Plaintiff. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED** and that this case be **DISMISSED**.

## I.  PROCEDURAL BACKGROUND

Rhonda Pryor ("Plaintiff") is a resident of Centerville, Tennessee. On October 19, 2021, she was terminated from her job as a school bus driver in Williamson County, Tennessee. Believing that her termination was unlawful, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on March 1, 2023. *Id*. at 11. She thereafter filed this this *pro se* lawsuit against the Williamson County Board

of Education d/b/a/ Williamson County Schools ("WCBOE")[1] and WCBOE Superintendent Jason Golden ("Golden") on May 24, 2023. *See* Complaint (Docket Entry No. 1). Bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), Plaintiff alleges that her termination was an act of discrimination against her on the basis of her race (black) and sex (female), as well as retaliation against her for exercising her rights under the FMLA.

Upon his motion, Defendant Golden was dismissed because he is not a proper defendant for Plaintiff's claims. *See* Order entered December 1, 2023 (Docket Entry No. 29). After Defendant WCBOE filed an answer (Docket Entry No. 11), a scheduling order was entered, setting out deadlines for pretrial activity in the case. The scheduling order deadlines have expired. A jury trial has been demanded but has not been scheduled pending resolution of the instant motion for summary judgment.

## II.  FACTUAL BACKGROUND

Except as noted herein, the events underlying this case are essentially undisputed. Plaintiff began working as a school bus driver for the WCBOE in March 2015. There is no evidence that she was disciplined prior to the events at issue in this case. While transporting middle school students on the morning of September 22, 2021, Plaintiff wrote the word COVID backwards on a whiteboard and then directed a nearly 11 minute long speech or discourse toward the students on a range of topics, including, but not limited to, what the word COVID means in

---

[1] Although Plaintiff named the Williamson County Schools as a defendant, the Court subsequently directed that the name of this defendant be changed to the Williamson County Board of Education d/b/a/ Williamson County Schools for the purposes of this lawsuit.  *See* Order entered July 28, 2023 (Docket Entry No. 16).

2

Hebrew and Latin when spelled backwards, the meaning of symbols, the internet, communism, China, abortion, the increasing price of goods and the collapse of the dollar, the status of the United States in the world, taxes, Amazon and Jeff Bezos, the content of television news broadcasts, cancer, and cancer treatments. This occurred over the PA microphone/speaker system on the bus and took place while Plaintiff was driving the bus with one hand on the steering wheel and one hand on the PA handset. While Plaintiff characterizes the incident as a discussion or an interaction with the students and that she often had "discussions with her students" during her six years as a bus driver, it is undisputed that the incident on September 22, 2021 (the "September 22 incident"), occurred. Both a transcript of the speech and video tapes of that morning on the bus are part of the record. *See* Affidavit of Brian Findlen (Docket Entry No. 34) at Exhibit Nos. 1 and 9; and Attachments to Docket Entry No. 43 at Exhibit No. 16.

Parents thereafter began to complain to the school transportation department about the September 22 incident. In response, Jeffrey Fuller ("Fuller"), the Director of the WCBOE Transportation Department, reviewed the video and decided to issue to Plaintiff a written reprimand, dated September 23, 2021, for "inappropriate and unprofessional" actions due to "discussion and comments" that "are not appropriate ones to have with students." *See* Findlen Affidavit at Exhibit 3. Fuller consulted with Lindsey Quirk ("Quirk"), the WCBOE Assistant Director of Employee Relations, in drafting the language of the written reprimand. Quick had not viewed the video of the incident at the time but was told by Fuller that Plaintiff had discussed COVID with students, which Quirk viewed as a controversial topic at the time. Although Plaintiff refused to sign the written reprimand, both Fullen and Quirk considered the matter closed and Plaintiff resumed driving a bus without interruption or other disciplinary action.

3

At least one parent did not consider the matter closed, however, and that parent continued complaining to Fuller. After the parent was permitted to view the video of the incident, the parent e-mailed Quirk on October 1, 2021, to again complain about the incident and about Plaintiff's continued employment as a bus driver. Quirk then viewed the video with Vickie Hall ("Hall"), the WCBOE Assistant Superintendent of Human Resources and Findlen, an investigator and manager in the Human Resources Department, and a formal investigation into the incident was opened. Later that day, a Friday, Plaintiff was instructed by Fuller that she would not be driving a bus the following Monday and that she was to report to the Human Resources Department Monday morning.

On October 4, 2021, Plaintiff reported as directed. Findlen provided her with a written suspension letter from Jason Golden ("Golden"), the WCBOE Superintended of Schools, that suspended her without pay pending completion of an investigation into allegations that she engaged in unprofessional and inappropriate conduct. *See* Findlen Affidavit at Exhibit 4. Quirk was also at the meeting, and it appears that Hall also was present. As she had done with the reprimand letter, Plaintiff refused to sign the suspension letter. Findlen told Plaintiff that he would be contacting her soon about a date and time for an investigative interview. Although disputed by Defendant, Plaintiff asserts that, during the course of this meeting, "she informed HR of her plan to go out of town [on October 4, 2021] to bring her sick and elderly parents back to Tennessee." *See* Complaint at 9.

Findlen thereafter called Plaintiff at approximately 2:30 p.m. that afternoon, leaving a voice message that her investigative interview was scheduled for the next day at 2:30 p.m., and he also sent Plaintiff an e-mail at 4:33 p.m. with this same information. Plaintiff received these

4

communications and was aware of the scheduled interview because she called and left a voice message with Findlen that evening, informing him that she would not be attending the interview. The next morning, Findlen called and spoke to Plaintiff about the scheduled interview, her need to be at the interview, and that the investigation would proceed without her if she did not attend. Plaintiff informed Findlen that she could not attend because she was out of town. Plaintiff ultimately did not attend the interview on Tuesday, October 5th, and the Human Resources investigation was concluded that day with a written report. The report set out the following conclusion:

> the topics of conversation were unprofessional, inappropriate and reflected poorly on Williamson County School. The discussions had political overtones, were graphic in nature and predicted morbid and other negative outcomes in the future. Comments about vaccination and COVID are incredibly sensitive in the current environment.

*See* Affidavit of Findlen at Exhibit 6. The report further concluded that Plaintiff had driven the bus with only one hand during the "10-minute period" when she was making her comments to the student, which was unreasonable and unsafe given the need for safety while driving a loaded school bus. The report finally concluded that Plaintiff was insubordinate:

> for her refusal to attend an investigative interview on 10/05/21 to facilitate the expeditious investigation of the alleged offenses. Insubordination is further supported by her unwillingness to inform the investigator of any other availability and her unwillingness to communicate her availability.

*Id*. The report ultimately recommended a "termination from employment on the grounds of unprofessional/inappropriate conduct, insubordination and unsafe operation of her school bus."

*Id*. On October 19, 2021, Golden issued to Plaintiff a written termination letter "to notify you of the termination of your at-will employment with Williamson County Schools, effective immediately." *See* Affidavit of Findlen at Exhibit 7.

5

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that her discipline stemmed from a complaint made by a white parent who wanted to get Plaintiff fired from her job. *See* Complaint at 6. She asserts that the WCBOE bus driver handbook encourages bus drivers to communicate with students, which is what she was doing on September 22. She further alleges that numerous WCBOE bus drivers who are male and/or white had similar discussions with students on their buses or engaged in misconduct, rule violations, and inappropriate behavior but were not suspended and terminated from their employment. *Id*. at 4-6 and 11. Based on these circumstances, she contends that she was treated less favorably than the other bus drivers because she is black and female.

Plaintiff asserts that she refused to sign the reprimand letter because she had not discussed COVID with the students on the bus and that she refused to sign the suspension letter because it was vague and broad in scope. *Id*. at 7-8. She disputes that she was insubordinate and contends that the disciplinary action against her was rushed through and that she was not given an opportunity to explain her side of the situation prior to her termination.

Plaintiff alleges that "she informed HR of her plan to go out of town [on October 4, 2021] to bring her sick and elderly parents back to Tennessee," *id*. at 9, that the voicemail that she left for Findlen on the evening of October 4, stated that she was unavailable to meet on October 5 and would contact him "shortly after I return."[2] She also alleges that she told Findlen during the phone conversation on the morning of October 5 that that she had gone to Chicago to get her parents but that she would contact him on October 7. *Id*. Plaintiff further alleges that she

---

[2] The audio recording of the October 4, 2021, voicemail is contained in the record as Exhibit 2 to the affidavit of Brian Findlen (Docket Entry No. 34 at 7). *See* notice of manual filing (Docket Entry No. 38).

thereafter made multiple attempts to contact Findlen, sending him text messages on October 7

and 21 and leaving voice messages with him on October 17  and 21, but that he did not respond,

and she later found out that Findlen had closed the investigation without "honor[ing] the deadline

of  October 7, 2021, for the Plaintiff to contact him." *Id*. at 10. Plaintiff contends that, by finding

her insubordinate because of her absence from the October 5 meeting, WCBOE retaliated against

her for engaging in protected activity under the FMLA when she went to transport her elderly

and sick parents. *Id.* at 3.


### IV.  SUMMARY JUDGMENT MOTION AND RESPONSE

Defendant contends that it should be granted summary judgment because the evidence in

the record does not support Plaintiff's claims. *See* Motion for Summary Judgment at 2.

Defendant first argues that Plaintiff cannot establish a *prima facie* case of race or sex

discrimination because she has no evidence that she was either replaced by someone outside the

protected class or was treated dissimilarly than someone outside the protected class.

Alternatively, Defendant argues that, even if Plaintiff is deemed to have established a *prima facie*

case of discrimination, Defendant relied on legitimate non-discriminatory reasons for

terminating's Plaintiff employment and Plaintiff is unable to show that these reasons were

actually a pretext for either race or sex discrimination.  Defendant further argues that, to the

extent any liability is ultimately assessed against it under Title VII, Plaintiff failed to mitigate her

damages by not obtaining new employment. Finally, Defendant argues that Plaintiff cannot

establish a *prima facie* case of FMLA retaliation because she failed to actually make a request for FMLA leave. [3]

In support of its motion, Defendant relies upon: (1) a memorandum of law (Docket Entry No. 32); (2) responses to written discovery requests (Docket Entry Nos. 32-1 to 32-3); (3) a statement of undisputed material facts (Docket Entry No. 33) with the appended affidavits and exhibits of Findlen (Docket Entry No. 34), Fuller (Docket Entry No. 35), Quirk (Docket Entry No. 36), and WCBOE Assistant Transportation Director and former Dispatch Supervisor Barbara Jean Williams (Docket Entry No. 37); and, (4) the bus video from September 22, 2021, and a voice mail recording from Plaintiff to Findlen on October 4, 2021 (Docket Entry No. 38).

In response, Plaintiff contends that there are genuine issues of material fact and that this case should be resolved by a jury. *See* Response in Opposition (Docket Entry No. 40). Plaintiff argues that her evidence shows that Defendant "does not follow rules or procedures" and that the investigation into the incident was secretly closed prior to allowing her to be interviewed. She further argues that the evidence shows that multiple white and/or male bus drivers committed rules infractions or misconduct but were not terminated and that she was terminated after notifying Defendant that she need to leave to attend to her sick and elderly parents. In support of her response, Plaintiff relies on: (1) a response to Defendant's statement of undisputed material facts (Docket Entry No. 41); (2) a memorandum of law (Docket Entry No. 42); (3) her own statement of disputed material facts (Docket Entry No. 43), and over 100 pages of appended

---

[3] Defendant also argues that it is entitled to summary judgment on discrimination claims brought under the Tennessee Human Rights Act ("THRA"). *See* Memorandum in Support (Docket Entry No. 32) at 7. However, Plaintiff brings her discrimination claims under only Title VII and has not brought claims under the THRA. *See* Complaint at 2. Accordingly, the Court will not address Defendant's arguments as they pertain to the THRA.

8

exhibits (Docket Entry No. 43-1);[4] and, (4) video and audio recordings of a school board meeting and of the September 22 incident (Docket Entry No. 44).

In reply, Defendant argues that the majority of Plaintiff's responses to its statement of undisputed material facts are either unresponsive to the fact asserted/and or fail to offer any citation to the record that creates an issue of disputed fact and that Defendant's statements of fact should therefore be deemed undisputed. *See* Reply (Docket Entry No. 45). Defendant further argues that (1) Plaintiff's arguments on the merits of her claims are not supported by the evidence in the record for her discrimination claims; (2) Plaintiff has not addressed Defendant's argument that she failed to mitigate her damages and thus has waived any argument on the issue; and, (3) Plaintiff has failed to support her assertion that she provided WCBOE with sufficient information concerning her alleged need to care for her parents and thus has not shown that FMLA protections were triggered. *Id.* Defendant supports its reply with the affidavit of Hall (Docket Entry No. 46) and with a response to Plaintiff's statement of disputed facts (Docket Entry No. 47).

## V. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pennington v.*

---

[4] Included in these exhibits are several affidavits: (1) affidavit of Pam Stigliano (Docket Entry No. 43-1 at 24-27); (2) affidavit of Lena Galbreath (Docket Entry No. 43-1 at 29-30); (3) affidavit of Jeff Groose (Docket Entry No. 43-1 at 33-34); (4) affidavit of Michael Galbreath (Docket Entry No. 43-1 at 95-98); and, (5) affidavit of Plaintiff(Docket Entry No. 43-1 at 100-102).

*State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols.*, Inc., 901 F.3d 619, 627–28 (6th Cir. 2018); Rule 56(c)(1)(A). Once the moving party has met this burden, the nonmoving party is not entitled to a trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

10

## VI. ANALYSIS

Defendant should be granted summary judgment on all claims brought by Plaintiff in this case. After review of the evidence before the Court, the Court concludes that no reasonable jury could find in favor of Plaintiff on her claims. Any questions of fact that exist in this case do not rise to the level of genuine issues of material fact that must be resolved at trial by a jury.

## A. Title VII Claims

Title VII prohibits an employer from discriminating against an employee because of his or her race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. A discrimination claim must be supported by direct evidence of unlawful discrimination or by circumstantial evidence that raises an inference of unlawful discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).

Direct evidence is evidence that, if believed, requires no inferences to conclude that an unlawful animus was at least a motivating factor in the adverse action that is challenged by the plaintiff. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Rock v. T.N.H.D. Partners, LLC*, 833 F. Supp. 2d 802, 815 (M.D. Tenn. 2011). In the instant case, Plaintiff has not presented any direct evidence supporting either a claim or racial discrimination or a claim of sexual discrimination.

Accordingly, Plaintiff must rely upon circumstantial evidence to prove her claims. This requires the Court to utilize the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff must first show a presumption of discrimination by establishing a *prima facie* case. If a *prima facie* case is established, the burden of production shifts to Defendant to offer a legitimate, nondiscriminatory

11

reason for the challenged conduct. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If Defendant offers such a reason, the presumption drops from the case, and Plaintiff must then show that the reason offered by Defendant is a pretext for discrimination. If Plaintiff satisfies this third step, the factfinder may reasonably infer discrimination. *Moffat v. Wal-Mart Stores, Inc.*, 624 F.App'x 341, 349 (6th Cir. 2015).

To establish a *prima facie* case, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and, (4) she was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Defendant devotes much of its supporting memorandum to arguing that Plaintiff cannot satisfy the fourth element of the *prima facie* case, pointing to differences between Plaintiff and the many other bus drivers that she asserts were treated more favorably than her because they were not terminated despite engaging in misconduct. *See* Memorandum at 8-20.

The Court finds it unnecessary to decide whether Plaintiff satisfies her *prima facie* case, because, even assuming that such a case is shown, Plaintiff has not set forth evidence that is sufficient to raise a genuine issue of material fact on the issue of pretext. Defendant contends that Plaintiff was terminated from her job because of (1) the inappropriate topics covered in the September 22 Incident and (2) her refusal to accept responsibility or cooperate with the investigation into her misconduct. *See* Defendant's Memorandum at 20. These articulated reasons are clear and reasonably specific. They are further legally sufficient and are supported by Defendant's evidence. *See* Defendant's SUMF at ¶ 7; Affidavit of Findlen at Exhibits 6-8;

Defendant's responses to written interrogatories at ¶ 2 (Docket Entry No. 32-1). Accordingly, Defendant has met its burden of producing legitimate, non-discriminatory reasons for terminating Plaintiff's employment.

The burden is therefore on Plaintiff to set forth evidence of pretext that is enough to rebut the request for summary judgment by Defendant. Plaintiff must "produce sufficient evidence from which a jury could reasonably reject [WCBOE's] explanation of why it fired her." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). This "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id*. at 400 n.4. And ultimately, this burden merges with Plaintiff's overall burden of proving discrimination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). *See also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) ("To demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful.").

A plaintiff typically shows pretext in one of three ways: (1) showing that the proffered reasons had no basis in fact, (2) showing that the proffered reasons did not actually motivate the employer's action, or (3) showing that the proffered reasons were insufficient to motivate the employer's action. *Chen*, 580 F.3d at 400. However, the Sixth Circuit has noted that these are not the only ways that a plaintiff can establish pretext; these three categories are simply a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400) (internal quotation marks omitted). Although a plaintiff remains free to pursue arguments outside these three categories, a plaintiff

13

must articulate some cognizable explanation of how the evidence presented establishes pretext. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). "Whichever method the plaintiff employs, [the plaintiff] always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him [or her]." *Clark v. Walgreen Co.*, 424 F.App'x 467, 474 (6th Cir. 2011) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)) (internal quotation marks omitted).

Although Plaintiff does not set out explicit arguments on the issue of pretext, she has generally done an admirable job as a *pro se* party of attempting to support her case with arguments and evidence that she believes prove her claims. However, the Court finds that Plaintiff simply fails to present sufficient evidence upon which a reasonable jury could reject Defendant's proffered explanation of why it terminated her employment and could infer that Defendant intentionally discriminated against her because of her race or sex.

First, Plaintiff cannot show the absence of a factual basis for Defendant's stated rationale for why it terminated Plaintiff's employment. For a plaintiff to challenge the factual basis of an employer's proffered termination rationale, the plaintiff must provide evidence that the employer's allegations never happened. *Miles*, 946 F.3d at 888-89; *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). Plaintiff simply cannot meet this standard. It is undisputed that the September 22 incident occurred and involved a lengthy discourse by Plaintiff toward the students on the bus about a variety of controversial topics. It is likewise undisputed that this incident led to a succession of complaints from parents of the student. Finally, it is undisputed that Plaintiff did not sign the written disciplinary letters provided to her and did not

14

appear for the investigative interview on October 5, 2021. Although Plaintiff attempts to minimize these events and explain them in a manner beneficial to her case, she cannot show, as a factual matter, that they did not happen.

Plaintiff also fails to set forth evidence that raises a genuine issue of material fact with respect to whether Defendant's proffered reasons actually motivated the decision to terminate her employment. Although Plaintiff does not clearly set out in her responsive filings an argument on this method of showing pretext, she appears to contend that Defendant's proffered reasons did not actually motivate the termination decision because (1) her termination letter from Golden did not contain a reason for the termination and only notified her of "the termination of her at-will employment," *see* Plaintiff's Memorandum at 4, Plaintiff's Response to Defendant's SUMF at ¶7; Plaintiff's Statement of Disputed Facts at ¶ 10, and (2) Defendant "continues changing reason[s] for plaintiff's termination ie., from one to 9 or more." *See* Plaintiff's Response at 2. Neither of these arguments has merit.

Pretext is not evidenced by the fact that Defendant did not explain in the written termination letter the reason for her termination, merely stating that she was an "at-will" dismissal,[5] and then later provided specific reasons for the termination during the process of an EEOC investigation. An inference of unlawful animus does not arise merely because an employer chooses to not provide a reason for a job termination at the time of the termination and only later provides specific reasons for the termination. *See Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 826 (6th Cir. 2023) (employer's failure to provide a reason at the time of the

---

[5] Defendant's evidence shows that, in June 2021, the WCBOE adopted a policy of no longer providing written notice of the reasons for the termination of at-will employees. *See* Defendant's responses to written interrogatories at ¶ 7 (Docket Entry No. 43 at 10).

termination of "at-will" employee" was not evidence of pretext even though specific reasons were subsequently stated by the employer); *Miles*, 946 F.3d at 891 (same).

There is also no evidence of changing rationales on the part of Defendant that would infer pretext. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Megivern v. Glacier Hills Inc.*, 519 F.App'x 385, 397 (6th Cir. 2013) (internal citation omitted) ("When a plaintiff is able to show that the defendant's justification for firing him changed over time, this can demonstrate a genuine issue of material fact that the proffered reason for termination is not only false, but that the falsity is a pretext for discrimination."); *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question."). In the instant case, however, Plaintiff has not set forth evidence supporting her assertion that Defendant changed its explanations for why Plaintiff was terminated, let alone that Defendant has offered "9 or more" explanations. Indeed, Plaintiff fails to set forth any evidence that Defendant has changed its rationale for Plaintiff's termination or that Defendant has offered explanations based on anything other than her actions during the September 22 incident and her actions with respect to the investigation into the incident. There is no evidence that Defendant's explanations for Plaintiff's termination have shifted over time or are somehow conflicting.[6]

By comparing herself to other bus drivers outside the protected class, Plaintiff is attempting to show pretext via the third category, which is premised upon a showing that

---

[6] Although Defendant also found in its final investigation report that Plaintiff was "unsafe" in the operation of the bus because of her use of the PA microphone, *see* Affidavit of Findlen at Exhibit 6, Defendant does not proffer this basis as a reason supporting her termination, which is consistent with a written discovery response from Golden, which stated that the safety issue was concerning but was not the "primary reason for the termination." *See* Defendant's responses to written interrogatories at ¶ 2 (Docket Entry No. 43 at 7).

Defendant's proffered reasons were insufficient to motive her termination. *See Chattman*, 686 F.3d at 349 ("The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff."). To succeed in this showing, Plaintiff must set forth evidence that she was treated more harshly than her comparators despite being similar to them in "all relevant respects" and engaging in substantially identical conduct with her proposed comparators. *Miles*, 946 F.3d at 893-94. In the absence of such evidence, an inference of a discriminatory animus does not arise from evidence about the discipline, or lack thereof, of other employees.

Employees are "similarly situated" when they are similar in all relevant respects. *Redlin v. Grosse Pointe Public School Syst.*, 921 F.3d 599, 610 (6th Cir. 2019) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1994)). In deciding whether two employees are similarly situated under this standard, relevant factors to consider include whether the individuals dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013). In the disciplinary context, this requires that Plaintiff and the comparator have engaged in acts of "comparable seriousness." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002); *see also Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 831 (6th Cir. 2019).

In her response to the motion for summary judgment, Plaintiff specifically argues that six white female or white male bus drivers engaged in misconduct but were treated more favorably

17

than her – John Hollister, Jackie Adams, Nicole Way, Thomas Gowan, Phil Marlin, and John Scherrer. *See* Plaintiff's Memorandum at 7-9. Upon scrutiny, however, the evidence before the Court about these six comparators fails to support Plaintiff's argument and further fails to support an inference of pretext.[7]

First, several of these comparators simply did not engage in the same, or even similar, conduct as Plaintiff: (1) Hollister, Adams, and Way are alleged to have used cell phones while driving; (2) Hollister is alleged to have left a child on the bus; (3) Gowan is alleged to have had a physical altercation with a student; and, (4) Hollister and Marlin are alleged to have smoked or used vaping products. *Id.* These infractions and wrongdoings are so dissimilar in kind from Plaintiff's conduct that these bus drivers cannot be viewed as similarly situated to Plaintiff with respect to the nature of the wrongdoings at issue.

Only one of the comparators identified by Plaintiff in her supporting memorandum, John Scherrer, is alleged to have engaged in conduct that involved verbal discourses or speeches directed at students on a bus. Plaintiff points to two incidents involving Scherrer, which she contends were met with more lenient treatment from Defendant than she received.

Plaintiff asserts that, in January 2021, Scherrer discussed his views about COVID with students on his bus ("January 2021 Scherrer incident") and that, in March 2023, he spoke to students on his bus about a recent school shooting that had taken place at the Covenant School in Nashville and that involved a transgender shooter ("March 2023 Scherrer incident"). *See*

---

[7] In its motion for summary judgment, Defendant addresses 12 bus drivers who Plaintiff identified during discovery as comparators and sets out evidence and arguments as to why they are not similarly situated to her. In her memorandum, Plaintiff only specifically argues that six of these comparators are similarly situated to her. Accordingly, the Court limits its analysis to these six comparators.

Plaintiff's Memorandum at 9. Plaintiff asserts that neither of these incidents led to Scherrer's termination from his job.

With respect to the January 2021 Scherrer incident, Defendant asserts out that: (1) Scherrer was counseled, at the direction of Fuller, by Dispatch Supervisor Barbara Jean Williams after Fuller had received complaints about Scherrer's conduct; (2) Scherrer accepted responsibility for his actions; (3) there were no other complaints made by parents about the incident; and, (4) Golden was not involved in making the decision to handle the matter with only a verbal counseling. *See* Affidavit of Fuller at ¶¶ 23-25; Affidavit of Williams at ¶¶ 6-7. With respect to the March 2023 Scherrer incident, Defendant disputes that that it received any complaints about Scherrer's conduct. *See* Affidavit of Fuller at ¶ 25; Affidavit of Williams at ¶ 8.

The Court finds that Plaintiff's evidence about the January 2021 Scherrer incident fails to support a showing pretext. There are significant factors that distinguish the January 2021 Scherrer incident and resulting discipline from Plaintiff's incident and resulting discipline. First and foremost, Plaintiff's lengthy discourse to the bus students involved a substantially greater number of controversial, sensitive, and inappropriate topics than Scherrer's discussion about COVID.[8] The incidents are simply not on the same level of seriousness. Second, there is no evidence that the intensity of parent complaints about Scherrer's conduct was at the same level as the complaints made about Plaintiff's conduct or that complaints about Scherrer were made to the WCBOE human resources department, as occurred with the complaints about Plaintiff. Third, Scherrer accepted responsibility for his actions when counseled about the incident. There

---

[8] Plaintiff's supporting evidence for her contention that Scherrer talked to students about topics that she was fired for is based upon inadmissible hearsay. *See* Affidavit of Pamela Stigliano at ¶ 13 (Docket Entry No. 43-1 at 26); Affidavit of Michael Galbreath at ¶ 13 (Docket Entry No. 43-1 at 96).

is no evidence that this was the case with Plaintiff. Finally, there is no evidence that the ultimate decision-maker for Plaintiff's termination, Superintendent Golden, was involved in any manner in directing the discipline of Scherrer.[9] These factors are differentiating circumstances that distinguish Scherrer's conduct from Plaintiff's conduct to the extent that no inference of pretext can reasonably be viewed as arising from Defendant's different responses.

With respect to the March 2023 Scherrer incident, the Court finds that there is such a lack of supporting evidence regarding this alleged incident that the issue of pretext cannot even be analyzed. Plaintiff's evidence consists of inadmissible hearsay evidence and speculation about the incident. *See* Affidavit of Stigliano at ¶ 10; Affidavit of Galbreath at ¶ 11; and Scherrer text (Docket Entry No. 43-1 at 91). This evidence is so deficient that it fails to come close to even raising a genuine issue of material fact and it fails to provide an evidentiary basis that supports a reasonable finding of pretext. At this stage of the proceedings, it is Plaintiff's responsibility to support her claim with evidence, not merely with speculation or unsupported allegations. Plaintiff simply has not met this responsibility with respect to this alleged incident.

In her response in opposition to Defendant's motion, Plaintiff makes other allegations that, while not fitting squarely within one of the three general categories of showing pretext, are directed at her argument that her termination was the result of unlawful discrimination. While pretext is normally shown by presenting evidence that falls within the scope of the three general categories, pretext can be shown by other evidence. *Miles*, 946 F.3d at 888. Nevertheless,

---

[9] Although Plaintiff states that Golden was the ultimate decision maker for disciplinary decisions regarding bus drivers, *see* Plaintiff's Response to Defendants SUMF at ¶ 31, she fails to provide any evidence that actually supports this assertion and, specifically, fails to provide any evidence that Golden was involved in determining discipline for Scherrer.

Plaintiff must articulate some cognizable explanation of how the evidence presented shows pretext. *Id*. The Court finds that Plaintiff falls short in this regard.

Plaintiff asserts that she "found that HR had been involved from day one, planting contrived evidence they created and used it as their 'evidence' against Plaintiff, ie., instructing and writing a reprimand in violation of Tennessee Code, claiming someone else wrote it." *See* Plaintiff's Response (Docket Entry No. 40) at 2. The assertion that Defendant created and used "contrived evidence" is wholly unsupported by the record before the Court. This assertion appears to be based upon the fact that Quirk assisted Fuller in revising and drafting the initial reprimand letter that Fuller presented to Plaintiff. However, the mere fact that Fuller contacted a member of the WCBOE's Employee Relations Department for assistance with the content and wording of the reprimand letter is unremarkable. Plaintiff offers no evidentiary support for her assertion that "contrived" evidence was created and used against her.

Plaintiff appears to contend that she was "still an active employee" after the October 19, 2021, termination letter, that her date of termination was "back dated" from November 3, 2021, to October 19, 2021, and that the reason for her termination was likewise retroactively changed from "at-will" to "unprofessional conduct." *See* Plaintiff's Memorandum at 4. This contention is based upon two e-mails: (1) a November 3, 2021, e-mail from Findlen to the WCBOE Human Resources Department in which he attaches Plaintiff's termination letter and requests "please process the termination for this employee," and (2) a response from Gloria Cagle that day in which she states, "I will process the termination effective 10/19/2021, reason unprofessional conduct." *See* Docket Entry No. 43-1 at 52. The Court fails to see how these e-mails support Plaintiff's case, let alone support a showing of pretext. Plaintiff offers no evidence that there is

any significance surrounding either the date her termination was processed by the Human Resources Department or the reason listed in the processing of her termination. Furthermore, it is undisputed that, regardless of the date upon which the Human Resources Department processed her termination, her termination letter was issued on October 19, 2021, and therefore her termination was not somehow "backdated."

Plaintiff contends that Defendant admits that it "follows no laws" and that it violated Tennessee laws and regulations in their actions by not including certain information and language in the reprimand, suspension, and termination letters that she was given. *See* Response at 2; and Plaintiff's Memorandum at 2 and 4. This assertion is likewise unsupported by the evidentiary record before the Court. The Court has viewed the video presented by Plaintiff as support for her "follows no laws" assertion, *see* Docket Entry No. 43 at Exhibit 16, and fails to see how this video supports Plaintiff's case, let alone a showing of pretext. Additionally, Plaintiff fails to show how any specific "Tennessee laws" were violated by Defendant and fails to show that the Rules of the Tennessee Department of Human Resources, upon which she relies on as support for her assertion, *id*. at Exhibit 25, apply to her employment. Finally, even if Plaintiff were able to point to an internal policy that Defendant did not follow in its discipline of her, such evidence, by itself, would be insufficient to show pretext. *Miles*, 946 F.3d at 896 ("an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext.") (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005)).

Finally, Plaintiff argues that Defendant's investigation into the September 22 incident was "secretly closed" prior to allowing her to participate in an investigative interview with

22

Findlen. *See* Response at 1; and Plaintiff's Memorandum at 3-4. Plaintiff alleges that although the investigative interview had been set for the afternoon of October 5, 2021, Findlen agreed during his phone call with her on the morning of October 5, 2021, that she would contact him on October 7, 2021, to set up the interview. *See* Plaintiff's Memorandum at 3. Plaintiff asserts that she attempted to contact Findlen, that he ignored her attempt, and that he and Quirk proceeded to close the investigation without her interview, stating in the Investigative Closure Form that the investigation was closed on October 5, 2021. *See* Plaintiff's Response at 1; and Investigative Closure Form (Docket Entry No. 43-1 at 3-5). Findlen states in his affidavit that, during the October 5, 2021, phone conversation, Plaintiff told him that she had no obligation to be available since she was suspended and that she would call him when she was available but declined to clarify when that would be, and that he told her that the investigation would proceed without her if she chose not to participate. *See* Findlen Affidavit at ¶ 7.

The Court finds that Plaintiff fails to raise a genuine issue of material fact that requires the denial of Defendant's motion and that requires that this case proceed to trial on this issue. First, Plaintiff's factual assertions are not actually supported by her affidavit. *See* Docket Entry No. 43-1 at 100-102. Second, even if the Court assumes that Findlen had agreed in the October 5, 2021, phone call that Plaintiff would contact him on October 7, 2021, about the investigative interview, there is no evidence showing that she actually contacted Findlen on that date. Although Plaintiff provides a copy of a text message that she asserts she sent Findlen on October 7, 2021, in which she states "I can be available to meet tomorrow, Friday October 8th. Let me know," *see* Docket Entry No. 43-1 at 14, Findlen provides evidence that: (1) he never communicated with plaintiff by text; (2) that he had not indicated to Plaintiff that texting him

23

was an acceptable form of communication; (3) that the phone that he used to communicate with Plaintiff was an office landline that is not set up to send or receive text message or to alert him that someone has attempted to text the phone; and, (4) that he did not receive any communication from Plaintiff after the October 5 phone call until she left him a voicemail on October 17, 2021. *See* Affidavit of Findlen at ¶¶ 7-8.

Plaintiff has not rebutted Defendant's evidence with evidence showing that her text on October 7, 2021, was received by Findlen. There is simply no support for Plaintiff's contention that Findlen ignored her attempt to contact him by text on October 7, 2021, because there is no evidence that he was aware of the attempted contact. Findlen was therefore justified in his belief that Plaintiff had failed to appear for the interview that was scheduled for October 5, 2021, and that she had also failed to reach out to him by October 7, 2021, to make herself available for an alternate interview date.[10] This belief is reflected in the Investigative Closure Report's statement "Mrs. Pryor didn't show for the scheduled interview. As of 10/7/2021, she hasn't reached out to make herself available for an interview." *See* Docket Entry No. 43-1 at 4. Although the Investigative Closure Report states that October 5, 2021, is the date that the investigation was concluded, it is apparent from the content of the report itself that the report was not drafted and finalized until October 7, 2021.

If the employer held an honest belief in its proffered reason for the challenged adverse action, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless." *Smith v. Chrysler Corp.*, 155 F. 3d 799, 806 (6thCir.

---

[10] The Court notes that, even though Findlen had communicated with Plaintiff by e-mail on the evening of October 4, 2021, and even though Plaintiff had both left a voice message with Findlen on October 4, 2021, and had communicated with him by telephone the next day, there is no evidence that Plaintiff made any attempt to e-mail Findlen or call him on October 7, 2021.

1998). "An employer's pre-termination investigation need not be perfect in order to pass muster under the rule." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). "The key inquiry is instead whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Seeger*, 681 F.3d at 285) (internal quotation marks omitted).

In the end, the Court finds that, based on the evidence before the Court, no reasonable jury could find that Plaintiff was unlawfully terminated from her employment because of her race or sex. As Plaintiff's employer, Defendant was entitled to take disciplinary action against Plaintiff as it saw fit in response to the September 21 incident and its aftermath. The evidence before the Court fails to support Plaintiff's contention that Defendant's decision to fire her from her job was a pretext for unlawfully discriminating against her. In the absence of such evidence, it is not the Court's role to interfere with this employment decision. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir.2004) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (citation and quotation omitted); *Adams v. Tennessee Dep't of Fin. & Admin.*, 179 F.App'x 266, 272 (6th Cir. 2006). Defendant is entitled to summary judgment on Plaintiff's Title VII claims.[11]

---

[11] Because the Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII claims, it is unnecessary to address Defendant's argument that Plaintiff failed to mitigate any damages resulting from her termination.

25

**B. FMLA Claim**

In addition to her Title VII claims, Plaintiff brings a claim under the FMLA. She alleges that she informed Defendant during her suspension meeting on October 4, 2021, that she would be going to Chicago that day to "bring her sick elderly parents back to Tennessee." *See* Complaint at 9. She contends that she was unable to attend the investigative interview scheduled of October 5, 2021, because of her need to attend to her parents and that Defendant's act of terminating her from employment, based in part upon its conclusion that she was insubordinate for failing to attend the investigative interview, was retaliation against her.

Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot establish a *prima facie* case of FMLA retaliation. For purposes of its summary judgment motion, Defendant accepts that Plaintiff made the statement that she alleges but contends that this statement is so vague and generalized that it was not sufficient to trigger FMLA protections and, consequently, there is no basis for a claim of FMLA retaliation. *See* Defendant's Memorandum at 24-25.

The FMLA affords an eligible employee up to twelve weeks of leave within a twelve-month period "in order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, sone, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves ... (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [the] right" to such leave. 29 U.S.C. § 2615(a)(1). It is also "unlawful for

26

any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. *Id*. § 2615(a)(2).

In the absence of direct evidence FMLA retaliation, of which there is none in this case, the M*cDonnell Douglas* burden-shifting test used for Title VII claims is used for the analysis of retaliation claims under the FMLA. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012); *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). To establish a *prima facie* case of FMLA retaliation, Plaintiff must show that: (1) she was engaged in a statutorily protected activity; (2) Defendant knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and, (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 681 F.3d at 283.

The Court finds that, based upon the evidence that is before the Court, no reasonable jury could find that Plaintiff suffered a violation of her rights under the FMLA. First, Defendant's argument that Plaintiff fails to show a *prima facie* case has merit. Although an employee does not need to expressly mention the FMLA as the source of a request to take leave, the employee must nonetheless provide the employer with sufficient information for the employer to reasonably conclude the FMLA leave may be implicated. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 F.App'x 548, 555 (6th Cir. 2010); *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005). Plaintiff's statement that she needed to "bring her sick elderly parents back to Tennessee" is simply too general and vague to satisfy the notice requirement for a FMLA claim. *See Gipson*, 387 F.App'x at 556 (collecting cases for the proposition that alerting an employer to "sickness" is not sufficient notice for a FMLA claim); *DeVore v. United Parcel Serv., Inc.*, 2022

27

WL 2329124, at *3 (W.D.Ky. June 28, 2022) (employee's statement that "I'm going to have to go out on surgery" was not sufficient provide notice of a FMLA request); *Cox v. Hausman*, 2020 WL 5814476, at *9 (N.D.Ohio Sept. 30, 2020) (holding employee's notice to employer of father's "serious illness" was not sufficient to trigger FMLA); *Rader v. Upper Cumberland Hum. Res. Agency*, 171 F.Supp.3d 751, 761 (M.D. Tenn. 2016) (Sharp, J.) (employee's statement that he was "sick" was insufficient notice to trigger FMLA).

Second, "an employee may not insulate [herself] from a pending dismissal by opportunistically invoking the FMLA." *Gipson*, 387 F.App'x at 557 (quoting *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469, 488–89 (6th Cir. 2005)). *See Wilson v. Dynasplint Sys.*, Inc., 2017 WL 1208848, at *7 (S.D.Ohio Apr. 3, 2017); *Barnett v. Aultman Hosp.*, 2012 WL 5378738, at *11 (N.D.Ohio Oct. 31, 2012). The undisputed facts before the Court show that the disciplinary investigation into the September 22 Incident was initiated and Plaintiff was suspended from work prior to any mention of her need to transport her sick, elderly parents back to Tennessee. Indeed, Plaintiff's first mention of the need to transport her parents occurred during the suspension meeting on October 4, 2021. Plaintiff's attempt to weave an FMLA claim into her case and to cast her termination as an act of FMLA retaliation is simply unavailing considering the facts of this case. Defendant is therefore entitled to summary judgment on Plaintiff's FMLA claim.

# RECOMMENDATION

For all these reasons, it is respectfully **RECOMMENDED** that the motion for summary judgment of the Williamson County Board of Education d/b/a Williamson County Schools (Docket Entry No. 31) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge