IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RHONDA PRYOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:23-cv-00532 ) ) JUDGE RICHARDSON |
| WILLIAMSON COUNTY BOARD OF EDUCATION d/b/a Williamson County Schools, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court[1] is a Report and Recommendation (Doc. No. 48, "R&R") of the Magistrate Judge, wherein the Magistrate Judge recommends that this Court grant the motion for summary judgment (Doc. No. 31, "Motion") filed by Defendant and dismiss this action in its entirety. Plaintiff filed objections to the R&R (Doc. No. 49, "Objections"),[2] to which Defendant filed a response (Doc. No. 51, "Response") and Plaintiff then filed an opposition with further objections (Doc. No. 52, "Opposition").[3]

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Under Fed. R. Civ. P. 72(b), any party has fourteen (14) days from receipt of the R&R in which to file any written objections to the Recommendation with the District Court. For pro-se plaintiffs, like Plaintiff, the Court is willing to extend this 14-day deadline by three days to allow time for filings to be transported by mail. Ultimately, Plaintiff's Objections were filed within 19 days of the R&R and are therefore not timely. However, the Court is willing to consider these Objections, given Plaintiff's pro-se status.

[3] Plaintiff filed this Opposition 14 days after Defendant filed its Response. This document is not permitted by the Federal Rules of Civil Procedure or this Court's Local Rules. Given that Plaintiff is pro se, however, the Court has reviewed the contents of the Opposition and has cited it in its analysis. The Court wishes to state that it has done so merely to accommodate Plaintiff's pro-se status. As is clear from this opinion, none of the information contained within the Opposition changed the Court's instant ruling, which overrules the Objections, adopts the R&R, and dismisses Plaintiff's action.

For the reasons stated herein, the Court overrules the Objections, adopts the findings of the Magistrate Judge in the R&R, grants the Motion, and dismisses this action in its entirety.

BACKGROUND

This case involves Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"). Plaintiff alleges that her termination was an act of discrimination against her on the basis of her race (black) and sex (female), as well as retaliation against her for exercising her rights under the FMLA.

The factual background as set forth by the Magistrate Judge in the R&R is essentially undisputed except where noted therein. As such, the Court adopts that factual background in its entirety and includes it here for reference.

> Except as noted herein, the events underlying this case are essentially undisputed. Plaintiff began working as a school bus driver for the WCBOE in March 2015. There is no evidence that she was disciplined prior to the events at issue in this case. While transporting middle school students on the morning of September 22, 2021, Plaintiff wrote the word COVID backwards on a whiteboard and then directed a nearly 11 minute long speech or discourse toward the students on a range of topics, including, but not limited to, what the word COVID means in Hebrew and Latin when spelled backwards, the meaning of symbols, the internet, communism, China, abortion, the increasing price of goods and the collapse of the dollar, the status of the United States in the world, taxes, Amazon and Jeff Bezos, the content of television news broadcasts, cancer, and cancer treatments. This occurred over the PA microphone/speaker system on the bus and took place while Plaintiff was driving the bus with one hand on the steering wheel and one hand on the PA handset. While Plaintiff characterizes the incident as a discussion or an interaction with the students and that she often had "discussions with her students" during her six years as a bus driver, it is undisputed that the incident on September 22, 2021 (the "September 22 incident"), occurred. Both a transcript of the speech and video tapes of that morning on the bus are part of the record. *See* Affidavit of Brian Findlen (Docket Entry No. 34) at Exhibit Nos. 1 and 9; and Attachments to Docket Entry No. 43 at Exhibit No. 16.
>
> Parents thereafter began to complain to the school transportation department about the September 22 incident. In response, Jeffrey Fuller ("Fuller"), the Director of the WCBOE Transportation Department, reviewed the video and

decided to issue to Plaintiff a written reprimand, dated September 23, 2021, for "inappropriate and unprofessional" actions due to "discussion and comments" that "are not appropriate ones to have with students." *See* Findlen Affidavit at Exhibit 3. Fuller consulted with Lindsey Quirk ("Quirk"), the WCBOE Assistant Director of Employee Relations, in drafting the language of the written reprimand. Quick had not viewed the video of the incident at the time but was told by Fuller that Plaintiff had discussed COVID with students, which Quirk viewed as a controversial topic at the time. Although Plaintiff refused to sign the written reprimand, both Fullen and Quirk considered the matter closed and Plaintiff resumed driving a bus without interruption or other disciplinary action.

At least one parent did not consider the matter closed, however, and that parent continued complaining to Fuller. After the parent was permitted to view the video of the incident, the parent e-mailed Quirk on October 1, 2021, to again complain about the incident and about Plaintiff's continued employment as a bus driver. Quirk then viewed the video with Vickie Hall ("Hall"), the WCBOE Assistant Superintendent of Human Resources and Findlen, an investigator and manager in the Human Resources Department, and a formal investigation into the incident was opened. Later that day, a Friday, Plaintiff was instructed by Fuller that she would not be driving a bus the following Monday and that she was to report to the Human Resources Department Monday morning.

On October 4, 2021, Plaintiff reported as directed. Findlen provided her with a written suspension letter from Jason Golden ("Golden"), the WCBOE Superintended [sic] of Schools, that suspended her without pay pending completion of an investigation into allegations that she engaged in unprofessional and inappropriate conduct. *See* Findlen Affidavit at Exhibit 4. Quirk was also at the meeting, and it appears that Hall also was present. As she had done with the reprimand letter, Plaintiff refused to sign the suspension letter. Findlen told Plaintiff that he would be contacting her soon about a date and time for an investigative interview. Although disputed by Defendant, Plaintiff asserts that, during the course of this meeting, "she informed HR of her plan to go out of town [on October 4, 2021] to bring her sick and elderly parents back to Tennessee." *See* Complaint at 9.

Findlen thereafter called Plaintiff at approximately 2:30 p.m. that afternoon, leaving a voice message that her investigative interview was scheduled for the next day at 2:30 p.m., and he also sent Plaintiff an e-mail at 4:33 p.m. with this same information. Plaintiff received these communications and was aware of the scheduled interview because she called and left a voice message with Findlen that evening, informing him that she would not be attending the interview. The next morning, Findlen called and spoke to Plaintiff about the scheduled interview, her need to be at the interview, and that the investigation would proceed without her if she did not attend. Plaintiff informed Findlen that she could not attend because she was out of town. Plaintiff ultimately did not attend the interview on Tuesday, October 5th, and the Human Resources investigation was concluded that day with a written report. The report set out the following conclusion:

> the topics of conversation were unprofessional, inappropriate and reflected poorly on Williamson County School. The discussions had political overtones, were graphic in nature and predicted morbid and other negative outcomes in the future. Comments about vaccination and COVID are incredibly sensitive in the current environment.

*See* Affidavit of Findlen at Exhibit 6. The report further concluded that Plaintiff had driven the bus with only one hand during the "10-minute period" when she was making her comments to the student, which was unreasonable and unsafe given the need for safety while driving a loaded school bus. The report finally concluded that Plaintiff was insubordinate:

> for her refusal to attend an investigative interview on 10/05/21 to facilitate the expeditious investigation of the alleged offenses. Insubordination is further supported by her unwillingness to inform the investigator of any other availability and her unwillingness to communicate her availability.

*Id*. The report ultimately recommended a "termination from employment on the grounds of unprofessional/inappropriate conduct, insubordination and unsafe operation of her school bus." *Id*. On October 19, 2021, Golden issued to Plaintiff a written termination letter "to notify you of the termination of your at-will employment with Williamson County Schools, effective immediately." *See* Affidavit of Findlen at Exhibit 7.

(Doc. No. 48 at 2–5) (footnotes omitted).

In her analysis, regarding Plaintiff's claims pursuant to Title VII, the Magistrate Judge concluded that Defendant's Motion should be granted, and summary judgment entered in favor of Defendant, on the grounds that Plaintiff had not set forth evidence sufficient to raise a genuine issue of material fact on the issue of pretext, as required for a plaintiff to avoid summary judgment at step three of the so-called *McDonnell Douglas*[4] framework governing the summary-judgment

---

[4] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden shifting framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

analysis of Title VII claims (like Plaintiff's) that are not based on direct evidence.[5] (Doc. No. 48 at 12). And regarding Plaintiff's claims for retaliation in violation of the FMLA, the Magistrate

---

> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted). Regarding pretext (step three of *McDonnell Douglas*), the undersigned has previously explained that

> [i]f the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext[, then] [t]his resulting burden is one of persuasion, and this burden of persuasion (as to pretext) at this stage "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. In other words, once the burden has shifted back to the plaintiff, the plaintiff must show by a preponderance of the evidence each of two components of pretext: that the defendant's reasons (i) were not its true reasons and (ii) were instead actually a pretext for discrimination. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him. *Braithwaite v. Tinken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

*Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 864-66 (M.D. Tenn. 2021) (footnotes and one citation omitted). As to *how* a plaintiff can show pretext, the Sixth Circuit has explained (consistent with the Court's observations below):

> Plaintiffs typically show pretext in one of three ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action. But these are not the only ways that a plaintiff can establish pretext; these three categories are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not? So plaintiffs remain free to pursue arguments outside these three categories. Even so, a plaintiff must articulate some cognizable explanation of how the evidence she has put forth establishes pretext.

*Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citations and internal quotation marks omitted). The teachings of *Miles* are reflected in the discussion in the R&R regarding whether Plaintiff had raised a genuine issue regarding pretext

[5] The Magistrate Judge concluded that given the absence of a genuine issue of material fact on the issue of pretext, it was unnecessary to decide if Plaintiff satisfied her *prima facie* case of discrimination (as required for a plaintiff to avoid summary judgment at step one of *McDonnell Douglas*). (Doc. No. 48 at 12).

Judge concluded that Defendant's Motion should be granted, and summary judgment entered in favor of Defendant, on the grounds that no reasonable jury could find that Plaintiff suffered a violation of her rights under the FMLA. (Doc. No. 48 at 27).

Specifically, regarding the claims of race and sex discrimination under Title VII, the Magistrate Judge reasoned that even if Plaintiff were to satisfy her *prima facie* case of discrimination, Plaintiff did not set forth evidence sufficient to raise a genuine issue of material fact on the issue of pretext. That is, Plaintiff did not show the absence of a genuine factual basis for Defendant's stated rationale for Plaintiff's termination, that Defendant's proffered reasons did not actually motivate the employer's action, or that the proffered reasons were insufficient to motivate the employer's action. (*Id*. at 13-20). Further, Plaintiff did not articulate any cognizable explanation of how the evidence presented showed pretext. (*Id.* at 20-21). Thus, the Magistrate Judge concluded that no reasonable jury could find that Plaintiff was unlawfully terminated from her employment because of her race or sex. As a result, the Magistrate Judge recommended dismissal of these claims with prejudice.[6]

Regarding Plaintiff's retaliation claim, Plaintiff asserted that she triggered FMLA protections after informing Defendant she would be unavailable to attend an investigative interview while traveling to "bring her sick [and] elderly parents back to Tennessee," and that Defendant, in violation of the FMLA, retaliated against her by holding the meeting in her absence and using her absence as a reason to terminate her. (Doc. No. 48 at 26) (brackets added). Defendant accepted for the purpose of its Motion that Plaintiff made this statement, but the Magistrate Judge

---

[6] Like many judges, the Magistrate Judge here used the terminology of "dismiss[al]" in describing the effect of the recommended grant of summary judgment, *i.e.,* she referred to the grant of a motion for summary judgment as effecting "dismissal with prejudice." There is nothing wrong with this, as long as it is kept in mind that the basis for the "dismissal" is summary judgment under Rule 56 and not dismissal under Rule 12 or Rule 41.

found the statement was so vague and generalized that it was not sufficient to put Defendant on notice and, consequently, there was no basis for a claim of FMLA retaliation. *Id*. Therefore, the Magistrate Judge recommended dismissal of this claim with prejudice.

## LEGAL STANDARD

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context*." Frias v. Frias*, No. 2:18-cv-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019) (internal citations and quotation marks omitted).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed the R&R and the Objections (as well as the Opposition). Below, the Court conducts a *de novo* analysis of the portions of the R&R challenged by the Objections.[7]

---

[7] As indicated herein, the Objections must be (and have been) generously construed in Plaintiff's favor in order to be considered to have actually challenged any portion of the R&R. The Court also includes the statements made by Plaintiff in her Opposition within the term "Objections." The Court refers to

ANALYSIS

The R&R recommends that the Court grant Defendant's Motion (meaning, as made clear above, grant summary judgment as to all claims or, to put it differently, dismiss all claims with prejudice). (Doc. No. 48 at 29). Via her Objections, Plaintiff makes repetitious, unsupported, and irrelevant contentions about the facts surrounding her termination. (Doc. Nos. 49-50, 52). Plaintiff's only objections that could be construed as specific and directed at the R&R are assertions (1) that a bus driver employed by Defendant with the surname Scherrer is an appropriate comparator for the purposes of satisfying Plaintiff's *prima facie* case of race and sex discrimination under Title VII (Doc. No. 49 at 3-6), (2) that Plaintiff's termination constituted FMLA retaliation because her absence at her investigative interview was caused by activity that is protected under the FMLA (Doc. No. 52 at 1-2), and (3) that her statements were adequate to put Defendant on notice that she was exercising her FMLA rights. (Doc. No. 52 at 4-5).

Plaintiff's first objection is directed at the Magistrate Judge's finding that Plaintiff did not establish Scherrer as an appropriate comparator. (Doc. No. 48 at 19-20). This objection fails because the record indicates that Scherrer's behavior is distinguishable from Plaintiff's behavior. This is fatal to the objection because "in the employment discrimination context . . . 'similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). Plaintiff asserts that Scherrer engaged in conversations with his students in a manner similar to the way that Plaintiff engaged with her students and yet was not investigated or disciplined. (Doc. No. 49 at 4-5). As the Magistrate Judge found, however, Scherrer's behavior is distinguishable because Plaintiff's

---

"Objections" specifically as the documents filed by Plaintiff objecting to the R&R, and refers to "objections" specifically as the assertions Plaintiff makes within those documents.

behavior and discussion with her students involved a greater number of controversial topics and there is no evidence that Scherrer's behavior resulted in the same level or intensity of parent complaints (Doc. No. 48 at 19). Furthermore, Scherrer was counseled about his behavior and, unlike Plaintiff, accepted responsibility for his actions. Therefore the record indicates that Scherrer is not an appropriate comparator. (Doc. No. 48 at 17-20).

Moreover, even if Plaintiff satisfied her *prima facie* case by showing that Scherrer is an appropriate comparator and was treated more leniently than she was, Plaintiff's objection fails alternatively because Plaintiff has not produced evidence sufficient to raise a genuine issue of material fact that Defendant's proffered reasons for termination were pretextual. Once a plaintiff establishes a *prima facie* case and the defendant then proffers a legitimate non-discriminatory reason for a plaintiff's termination, the plaintiff bears the burden of showing the defendant's reason was pretext and "not the real reason for its action . . . ." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). As discussed in a footnote above, a plaintiff can show pretext in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). But here, Defendant's proffered reasons for termination have a basis in undisputed fact, and Plaintiff has not proffered evidence beyond speculation or unsupported allegations to support a reasonable finding of pretext, via one of the above-mentioned three theories or some other theory. (Doc. No. 48 at 20).[8] Accordingly, Plaintiff's objection fails because even if Plaintiff could establish her *prima*

---

[8] Plaintiff asserts that Defendant "brought communism to Franklin, Tennessee." (Doc. No. 51 at 5). Plaintiff appears to argue that such action would be more "morbid and egregious" than her conduct on the bus during the September 22 incident and, therefore, that would somehow support a finding of pretext. (Doc. No. 49 at 2). But the question here is not whether Defendant has ever done something worse than what Plaintiff

*facie* case (and thus survive step one of *McDonnell Douglas*), Plaintiff has not produced sufficient evidence to raise a genuine issue of material fact as to whether Defendant's proffered reasons for termination were pretextual.

Plaintiff's second objection concerns the Magistrate Judge's finding that terminating Plaintiff for (at least, in part) not attending the October 5th investigative interview did not constitute retaliation for protected conduct under the FMLA. (Doc. No. 48 at 27). Plaintiff asserts that the Magistrate Judge erred in finding that Findlen, an investigator and manager in the human resources department, had an honest belief that Plaintiff did not make herself available for the investigative interview (and further asserts that Findlen scheduled the interview at a time at which he knew Plaintiff could not attend). (Doc. No. 52 at 1-4). Plaintiff attempts to introduce a screenshot of a text showing that Findlen knew of her unavailability and an exhibit purportedly in support of her assertion that Findlen had the technological capability to receive her texts. (Doc. No. 52-1 at 5-6). But there simply is no evidence in the record that Findlen was aware of her attempted contact. Plaintiff has not pointed to anything in the record demonstrating that Findlen intentionally scheduled the meeting at a time when Plaintiff could not attend. It is undisputed that Plaintiff did not appear for the investigative interview on October 5, 2021, and Plaintiff's objection accordingly fails. (Doc. No. 48 at 14-15).

Plaintiff's third objection concerns the Magistrate Judge's finding that her statements to school officials were too vague to place Defendant on notice of her exercising her FMLA rights. (Doc. No. 48 at 27). Ultimately, her objection fails because it merely expresses disagreement with

---

did during the incident in question; it is whether Plaintiff has raised a genuine issue as to whether Defendant's stated reason for Plaintiff's termination was pretextual.

the Magistrate Judge's findings.[9] Plaintiff asserts that her statement that she needed to take care of her sick and elderly parents was made to three human resource agents and was sufficient to give notice to Defendant that she was invoking FMLA protections. (Doc. No. 52 at 4-5). The record already reflects Plaintiff's assertion (which is disputed by Defendant) that she made her statement in the presence of three employees who worked in human resources or employee relations. (Doc. No. 48 at 4). Although the Magistrate Judge acknowledged that an employee does not have to expressly mention the FMLA to invoke its protections, she found that—even if Plaintiff had in fact made such a statement—the statement was too general and vague to place Defendant on notice that Plaintiff was invoking her FMLA rights. (Doc. No. 48 at 27-28). Plaintiff has not pointed to anything in the record that would alter this factual determination. Instead, Plaintiff merely disagrees with the Magistrate Judge's finding without providing any substantive reason why this Court should come to a different conclusion—a conclusion that the undersigned finds sound. Plaintiff's third objection accordingly fails.

## CONCLUSION

For the reasons discussed herein, Plaintiff's Objections are overruled, and the Court adopts the Magistrate Judge's R&R (Doc. No. 48). Accordingly, Defendant's Motion (Doc. No. 31) is GRANTED, and this action is DISMISSED WITH PREJUDICE in its entirety. The Clerk is DIRECTED to enter judgment pursuant to Fed. R. Civ. P. 58 and close the file.

---

[9] The Court notes that under Fed. R. Civ. P 72(b)(2) and Local Rule 72.02(a), this is not a technically valid objection, because what it does is merely "state[ ] a disagreement with a magistrate's suggested resolution" rather specifically object to a portion of the R&R. *Frias v. Frias*, No. 2:18-cv-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Nonetheless, the Court analyzes this objection in order to explain its reasoning in finding that Plaintiff's assertions represent a mere disagreement with the Magistrate Judge's findings.

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE